RECEIVED
USDC, WESTERN DISTRICT OF LA.
TONY R. MOORE, CLERK
DATE 07/09/09
BY ah

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| HERNANDO C. HALEY<br>D.O.C.#368574 | DOCKET NO. 08-cv-1057; SEC. P |
| VERSUS | JUDGE JAMES T. TRIMBLE, JR. |
| CORRECTIONS CORPORATION OF<br>AMERICA, ET AL. | MAGISTRATE JUDGE JAMES D. KIRK |

### REPORT AND RECOMMENDATION

Before the court is a civil rights complaint (42 U.S.C. §1983) filed by Plaintiff HERNANDO C. HALEY (D.O.C.#368574), pro se and in forma pauperis, on July 16, 2008. HALEY is an inmate in the custody of the Louisiana Department of Public Safety and Corrections (LDOC) and is housed at Winn Correctional Center (WCC) in Winnfield, Louisiana. Plaintiff seeks injunctive and declaratory relief as well as class certification; he lists seven other inmates as Plaintiffs, each of whom has filed his own action in this district. The plaintiff alleges numerous violations by the defendants of the constitutional rights of WCC inmates.

This matter has been referred to the undersigned for review, report, and recommendation pursuant to 28 U.S.C. § 626 and a standing order of this Court.

### FACTUAL AND PROCEDURAL BACKGROUND

Haley is the only named Plaintiff in this case, although seven other WCC inmates contemporaneously filed identical complaints in

this District Court.[1] The complaint filed by Haley, Guidry, McDowell, Lott, Ford, Aucoin, Robbins, and Chatman is virtually identical to the complaint previously filed by WCC Inmates Michael Sampson, Bobby Young, Ralph Sweat, Oscar James, Benjamin Wright, Chester Matthews, Stephen McGill, and Walter Houston.[2] The "new group" of plaintiffs, including Haley, took the typed complaint of the inmates listed above, erased the names of the eight previous plaintiffs, and wrote in their own names by hand.

Named as defendants are: Corrections Corporation of America (CCA), Warden Tim Wilkinson, Deputy Warden Tim Morgan, Deputy Warden Angel A. Martin, Chief of Security Virgil Lucas, Governor Bobby Jindal, and LDOC Secretary James LeBlanc.

**A.   ORIGINAL COMPLAINT**

In the complaint, it is alleged that overcrowding at WCC and certain policies and procedures of LDOC and CCA have led to the violation of Plaintiff's constitutional rights, as well as the rights of other inmates at WCC through:

1. excessive, malicious and sadistic use of force by staff;
2. the use of chemicals such as tear gas and pepper spray to punish or threaten inmates, sometimes administered to an entire dormitory; then, a lack of medical treatment afterward;
3. four and five point hand restraints used for mentally ill inmates and without cause and without proper monitoring;

---

[1] The other Plaintiffs listed on the Complaint are Pat A. Guidry (the "Lead Plaintiff"), Isaac McDowell, Edwin Lott, George Ford, Todd Aucoin, Paul Ray Robbins, and Hernando C. Haley.

[2] Docket numbers 08-915, 08-916, 08-917, 08-918, 08-920, 08-921, 08-923, and 08-924, respectively.

4. inmates placed in isolation for arbitrary reasons and not properly monitored;
5. inmates exposed to unreasonable risks of harm by other inmates due to inadequate staffing and unsupervised or improperly trained guards;
6. ignoring a known practice of "kicking out" where larger inmates force younger or more fragile inmates to give up food or personal belongings under threats of violence;
7. placing "hits" on certain inmates and "hiring" other inmates to beat up or intimidate them;
8. abusive and arbitrary disciplinary practices;
9. failing to conduct disciplinary hearings;
10. failing to investigate complaints of abuse by guards and thwarting inmates' efforts at contacting PZT (project zero tolerance);
11. failing to provide adequate mental health care;
12. failing to provide adequate physical health care, including vision, hearing, dental, and substance abuse treatment;
13. lack of programs, recreational items, or activities to occupy inmates;
14. lack of nutritional meals;
15. failing to give inmates privacy in the bathrooms;
16. failing to provide sufficient clothing, shoes, and linens;
17. inadequate access to the courts; and
18. retaliation against inmates who try to access the courts.

Of the above allegations, Plaintiff initially claimed that he was *personally* subjected to: "inadequate medical care; inadequate administrative remedy process; inadequate law library; overcrowding; inadequate clothing; and unsanitary conditions."[3] [Doc. #1-4, p.7]

B. **AMENDED COMPLAINT**

Because the complaint provided only general and conclusory allegations (which were identical to those of Inmate McGill in a

---

[3] Haley's name is hand-written in paragraph 17, page 8 of Document #1-4. In the original complaint filed by the first group of inmates, the specific allegations in paragraph 17 were attributed to Inmate Walter Houston. 1:08-cv-0923.

3

prior lawsuit), the Court ordered Plaintiff to amend the complaint and allege facts to support the conclusion that **his** constitutional rights were violated. Plaintiff submitted an amended complaint stating that he wished to dismiss claims 1, 3, 4, 6, 7, 8, 9, 13, 14, and 18, as enumerated above.

Therefore, Plaintiff's only remaining claims involve conditions of confinement including: the use of chemicals such as tear gas and pepper spray to punish or threaten inmates; exposure to an unreasonable risk of harm by other inmates due to inadequate staffing and unsupervised or improperly trained guards; failing to investigate complaints of abuse by guards and thwarting inmates' efforts at contacting PZT (project zero tolerance); failing to provide him with adequate mental and physical health care; failing to give Plaintiff privacy in the bathrooms; failing to provide sufficient clothing, shoes, and linens; and denial of access to the courts.

**LAW AND ANALYSIS**

First, to obtain a preliminary injunction a Plaintiff must show (1) a substantial likelihood that he will prevail on the merits, (2) a substantial threat that he will suffer irreparable injury if the injunction is not granted, (3) that his threatened injury outweighs the threatened harm to the party whom he seeks to enjoin, and (4) that granting the preliminary injunction will not disserve the public interest. See Planned Parenthood of Houston &

4

Southeast Texas v. Sanchez, 403 F.3d 324, 329 (5th Cir. 2005).[4] Also, a civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. See Schultea v. Wood, 47 F.3d 1427, 1433 (5th Cir. 1995); see also Sias v. Louisiana 146 Fed. Appx. 719 (5th Cir. 2005)("Sias's allegations are vague and conclusory and are therefore insufficient to establish a 42 U.S.C. §1983 claim.") (citations omitted); Elliott v. Perez, 751 F.2d 1472, 1479 (5th Cir. 1985)(A plaintiff may not plead merely conclusory allegations to successfully state a section 1983 claim, but must instead set forth specific facts which, if proven, would warrant the relief sought. (citations omitted)).

### 1. Use of chemicals to punish or threaten

First, Plaintiff complains that he has been subjected to the use of chemicals such as tear gas and pepper spray to punish or threaten inmates and then denied medical care afterward. He was ordered to amend his complaint to state when such incidents occurred, where, and the name(s) of the offending officers. Plaintiff was also instructed to allege facts indicating deliberate indifference and to allege facts indicating that he will suffer irreparable injury if injunctive relief is not granted.

---

[4] For a permanent injunction to issue, the plaintiff must prevail on the merits of his claim and establish that equitable relief is appropriate in all other respects. See Dresser-Rand Co. v. Virtual Automation Inc., 361 F.3d 831, 847 (5th Cir. 2004)(citations omitted).

In his amended complaint, Plaintiff does not actually provide any facts of defendants using tear gas or pepper spray to punish or threaten him. Rather, he claims that after some unnamed inmate was sprayed with pepper spray on another tier, the WCC fans spread the pepper spray all over the unit apparently causing him some discomfort. Then, when he asked to make a sick call, his request was denied while inmates from Winnfield and Jonesboro were shown favoritism by the guards and were allowed to seek treatment. Plaintiff does not provide any dates or times, and he names no officers allegedly responsible for the incidents.

The Eighth Amendment dictates that cruel and unusual punishment shall not be inflicted, and the amendment is applicable to the States by reason of the Due Process Clause of the Fourteenth Amendment. <u>Robinson v. California</u>, 370 U.S. 660, 675 (1962). The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. <u>Helling v. McKinney</u>, 509 U.S. 25, 31 (1993). The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994). A prison official has violated the Eighth Amendment when he 1) shows a subjective deliberate indifference to 2) conditions posing a substantial risk of serious harm to the inmate. <u>See Farmer</u>, 511 U.S. at 833-34. "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the

conscience of mankind." McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997); see also Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999).

The facts alleged by Plaintiff are vague and indicative of negligence, at best. He does not allege deliberate indifference on the part of any defendant in Plaintiff being exposed to pepper spray that was sprayed at some other inmate on another tier. Moreover, Plaintiff has not alleged a substantial threat that he will suffer irreparable injury without injunctive relief. His claim is frivolous.

### 2. Inadequate Staffing

In the original complaint, Plaintiff alleges that inmates are exposed to unreasonable risks of harm by other inmates due to inadequate staffing and unsupervised or improperly trained guards. In his amended complaint, Plaintiff alleges that on June 5, 2008, he was involved in a fight with Inmate William Hebert. He sates that he warned Officer Walker approximately twenty-five to forty minutes before the incident because Inmate Hebert had strong-armed Plaintiff out of his compact disc player earlier that day. Plaintiff was convicted of the disciplinary charge of fighting. This isolated incident - a fight over a CD player on June 5, 2008 - is the only incident presented by Plaintiff. Plaintiff has presented nothing but a conclusory allegation that he faces a substantial threat of irreparable injury without injunctive relief.

### 3. Failure to investigate complaints of abuse by guards; thwarting inmates' efforts at contacting PZT.

Next, Plaintiff complains that the defendants fail to investigate complaints of abuse by guards. All Plaintiff offers in support of that claim are allegations that Ash Unit Manager Mrs. Wiley failed to answer his numerous requests to move to Birch Unit. Plaintiff alleges that Wiley is unprofessional and shows favoritism towards inmates from the Winnfield area. He also alleges that Defendants failed to investigate the reason why his seventeen year old sister was denied visitation after being approved in advance.

Plaintiff has not alleged the violation of a constitutional right. He does not submit factual allegations in support of the claim that reported incidents of abuse by guards were not investigated. Plaintiff's complaint that he was not moved to the unit of his choice and that his sister was denied visitation on one occasion in January 2008 [Doc. #5, p.9-10] do not present a constitutional claim. Federal courts are not prison managers and, ordinarily, courts accord great deference to the internal administrative decisions of prison officials. See Royal v. Clark, 447 F.2d 501 (5th Cir. 1971); Krist v. Smith, 439 F.2d 146 (5th Cir. 1971); Haggerty v. Wainwright, 427 F.2d 1137 (5th Cir. 1970). In fact, the Supreme Court has continuously cautioned federal courts from assuming "a greater role in decisions affecting prison administration." Shaw v. Murphy, 532 U.S. 223, 230 (2001); accord Washington v. Harper, 494 U.S. 210, 223-24 (1990); Turner v.

8

Safley, 482 U.S. 78, 84-85 (1987). Moreover, Plaintiff has not presented facts indicating that he faces a substantial threat of irreparable injury without injunctive relief.

### 4. Failure to provide adequate mental health care

Next, Plaintiff complains that he was denied adequate mental health care. In support of this claim, the only facts alleged by plaintiff are that when he arrived at WCC in 2004, he spoke with Warden Angel Martin who instructed Plaintiff to write a request for mental health care. Plaintiff wrote the request and spoke with Mrs. Smith and the director about a victim awareness class. He alleges that Mrs. Smith read an affidavit by one of Plaintiff's co-defendants and told Plaintiff that it did seem as though he was innocent. Plaintiff does not allege that he was ever denied mental health care. His claim is frivolous.

### 5. Lack of adequate physical health care

Next, Plaintiff claims that on August 2005, he was finally sent to LSU hospital after complaining for one year about a knot on his lip. [Doc. #4, p.13] One exhibit provided by Plaintiff is a copy of an administrative remedy response from responding to Plaintiff's complaint regarding a $3.00 charge for medical care. In the response, the warden states that Plaintiff made a sick call on July 28, 2005 for a knot on his face and was evaluated on August 1, 2005. He was referred to the doctor who ordered an oral maxillary surgery consult on August 4, 2005. Plaintiff was

examined at LSU-S on August 23, 2005. The LSU doctor made the recommendation that Plaintiff quit smoking. No further recommendations or instructions were given by the LSU physician. Plaintiff's administrative complaint involved the $3.00 charge, not a denial of medical care.

Another exhibit shows that Plaintiff made a sick call on March 2, 2008 for a toothache. He was placed on "call out" to see the dentist the next morning. [Doc. #5, p.16] Plaintiff complains that he suffered pain in his mouth for three days and that, if he had received better dental care, his teeth would not have gotten so decayed.

In both instances referenced by Plaintiff, he received medical treatment. While Plaintiff disagrees with the treatment received, a disagreement with medical treatment does not state a claim under the Eighth Amendment. See Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997); Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985). Plaintiff does not allege a defendant "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985). Moreover, Plaintiff has not presented allegations indicating that he faces irreparable injury without injunctive relief.

## 6. Lack of Privacy in Bathrooms

Plaintiff complains that his privacy is being violated because female guards can see over the four foot tall shower wall while Plaintiff is taking a shower. Plaintiff complains that this causes him embarrassment. He also complains that the hot water is turned off for twenty-four hours at a time two to three times a month "due to unsanitary practices." Again, Plaintiff has not stated a constitutional claim and has not alleged that he is facing irreparable injury without some sort of injunctive relief.

Prisoners retain, at best, a very minimal Fourth Amendment interest in privacy after incarceration. Hudson v. Palmer, 468 U.S. 517, 527 (1984). The Fifth Circuit and other courts have upheld the use of female guards in areas that gave them view of unclothed male inmates. See Barnett v. Collins, 940 F.2d 1530 (5th Cir.1991) (table)(unpublished)(upholding use of female guards in guard towers giving full view of male inmates taking showers); Johnson v. Phelan, 69 F.3d 144, 147 (7th Cir. 1995)("If only men can monitor showers, then female guards are less useful to the prison; if female guards can't perform this task, the prison must have more guards on hand to cover for them."); Timm v. Gunter, 917 F.2d 1093, 1101-02 (8th Cir. 1990) (explaining that constant visual surveillance by guards of both sexes is a reasonable and necessary measure to promote inmate security); Michenfelder v. Sumner, 860 F.2d 328, 334 (9th Cir. 1988)(stating that episodic and casual

observation of male prisoners by female guards is justified by security concerns); Grummett v. Rushen, 779 F.2d 491, 496 (9th Cir. 1985)(stating that "[t]o restrict female guards from ... occasional viewing of the inmates would necessitate a tremendous rearrangement of work schedules, and possibly produce a risk to both internal security needs and equal employment opportunities"). Additionally, federal courts are not prison managers and, ordinarily, courts accord great deference to the internal administrative decisions of prison officials. See Royal v. Clark, 447 F.2d 501 (5th Cir. 1971); Krist v. Smith, 439 F.2d 146 (5th Cir. 1971); Haggerty v. Wainwright, 427 F.2d 1137 (5th Cir. 1970). In fact, the Supreme Court has continuously cautioned federal courts from assuming "a greater role in decisions affecting prison administration." Shaw v. Murphy, 532 U.S. 223, 230 (2001); accord Washington v. Harper, 494 U.S. 210, 223-24 (1990); Turner v. Safley, 482 U.S. 78, 84-85 (1987). Plaintiff's claim should be dismissed.

### 7. Failure to provide sufficient clothing, shoes, and linens

Plaintiff complains that WCC only provides inmates with used clothing and boots, and that used work boots expose him to a risk of Athlete's Foot. He does not allege that he ever contracted Athlete's Foot or any other fungal infection, only that used boots present that risk. He also complains that inmates receive only two new sheets rather than four and only a jacket rather than a jacket and sweatshirt. Plaintiff complains that he cannot be comfortable

wearing a jacket indoors.

While the Constitution does not permit inhumane prisons, it "does not mandate comfortable prisons." Rhodes v. Chapman, 452 U.S. 337, 349 (1981). The Eighth Amendment imposes duties on prison officials to provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must "take reasonable measures to guarantee the safety of the inmates," Farmer v. Brennan, 511 U.S. at 832 (citing Hudson v. Palmer, 468 U.S. 517, 526-527 (1984)). Plaintiff has not alleged facts indicative of inhumane conditions of confinement. He does not allege that he was denied shoes or a jacket or sheets, he simply disagrees as to the quantity and type provided. Plaintiff has not alleged a substantial threat that he will suffer irreparable injury if an injunction is not granted. His complaint is frivolous.

### 8. Access to Courts

Plaintiff alleges that he is being denied adequate access to the courts because he is only allowed access to the law library between three to six days per month. An inmate's fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of **meaningful legal papers** by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law. Bounds v. Smith, 430 U.S. 817 (1977). However, there is no

13

abstract, freestanding right to a law library or legal assistance. An inmate must establish relevant actual injury, which cannot be shown by establishing that a prison's law library or legal assistance program is subpar in some theoretical sense. Lewis v. Casey, 518 U.S. 343, 351 (1996). The only access guaranteed is *meaningful* access, and the inmate must demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a non-frivolous legal claim. Lewis, at 351-353. Plaintiff has not alleged that his efforts to pursue a non-frivolous legal claim were ever hindered. He does not allege that he faces irreparable injury without injunctive relief. His claim is frivolous.

**CONCLUSION**

For the foregoing reasons, **IT IS RECOMMENDED** that Plaintiff's complaint be **DENIED and DISMISSED WITH PREJUDICE** as frivolous and failing to state a claim upon which relief may be granted under 28 U.S.C. §1915(e)(2)(B)(i) and (ii).

Under the provisions of Title 28, Section 636(b)(1)(c) of the United States Code and Federal Rule of Civil Procedure 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir. 1996).

THUS DONE AND SIGNED at Alexandria, Louisiana, this _____ day of _____, 2009.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE